Case 2:23-cv-00039 Document 12 Filed on 04/13/23 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
April 13, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH LEE BEAN, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:23-CV-00039 |
| | § | |
| THE STATE OF TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Joseph Lee Bean, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

The undersigned recommends that Plaintiff's § 1983 claims against the State of Texas for money damages and injunctive relief be DISMISSED without prejudice as barred by the Eleventh Amendment, that Plaintiff's § 1983 claims for money damages against Officer Juarez in his official capacity be DISMISSED without prejudice as barred by the Eleventh Amendment, and that Plaintiff's remaining due process claims against Assistant Warden Juan J. Nunez ("Warden Nunez"), inmate Wayne Douglas Harris ("Offender Harris"), and Officer Peter Juarez ("Officer Juarez") be DISMISSED with prejudice as frivolous or for failure to state a claim upon which relief can be granted. The undersigned recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

### A. Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. Background.

#### 1. Plaintiff's § 1983 action.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) and is housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations in this case arise in connection with his current housing assignment. In this action, Plaintiff sues the State of Texas, Warden Nunez, Offender Harris, and Officer Juarez. (Doc. No. 1, pp. 1, 3.) Liberally construed, Plaintiff generally claims that his due process rights were violated in connection with his placement in restrictive housing and the denial of his requests to be transferred from restrictive housing at the McConnell Unit to another unit. *Id.* at 4. Plaintiff seeks monetary relief in the amount of $800 billion and a unit transfer. *Id.*

#### 2. Plaintiff's More Definite Statement.

As directed by the Court, Plaintiff filed a More Definite Statement to explain his claims in more detail. (Doc. No. 11.) The following representations were made in either Plaintiff's complaint (Doc. No. 1) or his More Definite Statement (Doc. No. 11).

Public records show that Plaintiff was convicted in Harris County of possession with intent to distribute a controlled substance (cocaine) and was sentenced to sixty years in prison on December 11, 2002. *See* TDCJ Offender Search Website, *available at* https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05282123 (last visited Apr.

11, 2023). Plaintiff arrived at the McConnell Unit on March 11, 2021. (Doc. No. 11, p. 1.) Plaintiff states that his current classification level is "State ap[pr]oved trusty, 4, 1A." *Id.*

From the time he entered TDCJ custody until arriving at the McConnell Unit, Plaintiff has been found guilty of the following disciplinary offenses: refusing to obey an order; tampering with a lock mechanism; being out of place; assaulting a correctional officer; making a false statement; committing extortion; having an inappropriate relationship; possessing marijuana; and committing sexual misconduct. (Doc. No. 11, p. 1.) While housed at the McConnell Unit beginning on March 11, 2021, Plaintiff has been found guilty of the following disciplinary offenses: possessing contraband; assaulting a correctional officer; possessing a weapon; possessing marijuana; distilling fluid; being in a prohibited area; and committing extortion. *Id.* In June 2021, Plaintiff was first placed in what he describes as "administrative segregation, restrictive housing, [and] security detention." *Id.* Plaintiff is currently housed in restrictive housing. *Id.*

With the exception of the conviction for possessing contraband, Plaintiff states that the other disciplinary convictions while housed at the McConnell Unit are false because he did not commit the underlying offenses. (Doc. No. 11, p. 1.) According to Plaintiff, Officer Juarez repeatedly stated that Plaintiff assaulted him on May 27, 2022, while Plaintiff was escorted up the stairs. *Id.* In addition, Plaintiff alleges that Officer Juarez then "had two assaults in court" and "ask[ed] for a 15 year sentence an[d] a 35 year sentence." *Id.* at 2. Plaintiff indicated that he did not appeal through the grievance process and that such appeals were to be held in "security detention." *Id.* Plaintiff's conviction for assaulting Officer Juarez has not been overturned on appeal. *Id.*

When asked to define what he meant by the use of the word "employment," Plaintiff replied that "[e]mployment are all pe[r]sons walking on wing hired on the McConnell Unit." (Doc. No. 11, p. 2.)  The undersigned construes this to mean correctional officers or other prison employees.  Plaintiff then states that several officers caused "employment" to bring the following disciplinary cases against him: two cases for assault by Officer Juarez; one case for sexual assault by Officer Monosevais; three cases each for assault and possession of weapons by Officer D. Austin; an assault case by Officer Cruz; and a case for racketeering by Major Tanner.  *Id.*  According to Plaintiff, Offender Harris does not want Plaintiff to have trusty status "so money can be taken from a line 3."  *Id.*

Plaintiff indicates that several felony disciplinary cases were brought against him, citing cases for possessing marijuana, possessing weapons, and assaulting staff and correctional officers.  (Doc. No. 11, p. 2.)  Plaintiff was convicted of all felony cases involving Offender Harris.  *Id.*  None of Plaintiff's felony cases were overturned on appeal.  *Id.*

With respect to his disciplinary cases, Plaintiff complains that "employment" placed untrue character statements into the record against him, such as statements indicating he was gay, a racist, a "five and one-half hoover," a blood member, and a "hermat."[2]  *Id.*  Plaintiff further complains that his placement in restrictive housing is based on these false statements, which has led him to filing grievances at the unit as well as this complaint.  *Id.*

Plaintiff alleges that he has filed 12 Step 1 and 12 Step 2 grievances asking to be transferred from restrictive housing at the McConnell Unit to another unit.  (Doc. No. 11, p. 2.)  He has also allegedly made verbal statements at a classification hearing seeking transfer.  *Id.*

---

[2]  Plaintiff does not offer any explanation or definition for a "five and one-half hoover," a blood member, or a "hermat."

The Unit Classification Committee ("UCC") allegedly denied Plaintiff a transfer, finding that insufficient evidence existed for an offender protection investigation. *Id.* at 3. On January 2, 2023, the State Classification Committee ("SCC") allegedly denied Plaintiff "for promotion in class transfer." *Id.* According to Plaintiff, the SCC denied Plaintiff a transfer because he had been given a "trustee status" and "for talking to rank an [sic] correctional officer and having trays pass to [him]." *Id.*

Plaintiff claims that the State of Texas has violated his constitutional rights by holding him unlawfully in restrictive housing and denying him access to the court though preventing Plaintiff from receiving incoming packages, transcripts, and lawsuit packages. (Doc. No. 11, p. 3.) Plaintiff claims that Warden Nunez is holding him captive by placing "his signature of authority on unit while employment was writing disciplinary cases and offenses seizing all [Plaintiff has]." *Id.* Plaintiff sues Warden Nunez in his individual capacity. *Id.*

Plaintiff claims that Offender Harris has worked with prison officials from "employment" to write disciplinary cases against him involving offenses that have caused Plaintiff to lose money to Offender Harris. *Id.* Plaintiff claims that Officer Juarez has obstructed justice by repeatedly writing false statements against Plaintiff which have interfered with his transfer from the unit or release. *Id.* Plaintiff sues Officer Juarez in his official capacity. *Id.*

### C. *Legal standard.*

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as

practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Id*. Therefore, the Court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that the defendant is liable. *Id*.; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id*.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983

claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

### D. Discussion.

#### 1. The Eleventh Amendment bars Plaintiff' claims against the State of Texas.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court). Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd.*

*of Regents*, 528 U.S. 62, 72–76 (2000), and the State may waive its immunity by consenting to suit, *'AT&T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983 or 42 U.S.C. § 1985. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff claims that the State of Texas violated his constitutional rights under § 1983 by holding him unlawfully in restrictive housing and denying him access to the court. However, the Eleventh Amendment bars a § 1983 suit against a state or state entity, regardless of whether money damages or injunctive relief is sought. *Will*, 491 U.S. at 69-71 (states are not "persons" subject to suit under § 1983); *Cox v. Texas*, 354 F. App'x 901, 902 (5th Cir. 2009) (per curiam) (The Eleventh Amendment immunity applies to § 1983 actions brought against the State of Texas and its agencies, regardless of the relief sought). Accordingly, Plaintiff's claims against the State of Texas should be dismissed without prejudice as barred by the Eleventh Amendment.[3]

### 2. The Eleventh Amendment bars Plaintiff's § 1983 claims against Officer Juarez in his official capacity for monetary relief.

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Fla. V. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has

---

[3] Claims barred by the Eleventh Amendment are subject to dismissal for lack of subject matter jurisdiction and must, therefore, be dismissed without prejudice. *See Warnock v. Pecos Cnty, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars a prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues Officer Juarez in his official capacity for money damages, such § 1983 claims are barred by the Eleventh Amendment. Thus, Plaintiff's claims for money damages against Officer Juarez in his official capacity should be dismissed without prejudice.

### *3. Plaintiff's due process claims against Warden Nunez, Officer Juarez, and Offender Harris are frivolous or fail to state a claim upon which relief may be granted. These claims should be dismissed with prejudice.*

Liberally construed, Plaintiff claims that he has been unlawfully placed in restrictive housing since 2021 as punishment for his numerous disciplinary convictions. (Doc. No. 11, pp. 1-2.) Related to this claim, Plaintiff asserts that his due process rights were violated when he was convicted of numerous disciplinary offenses due to several false statements being placed into the record. *Id.* Plaintiff alleges that Officer Juarez repeatedly caused false statements to become part of his disciplinary case record and that such statements impacted his ability to be transferred to another unit or otherwise be released. *Id.* at 1, 3. Plaintiff alleges that Officer Juarez worked with "employment" to bring two cases for assault against Plaintiff. *Id.* at 2. Plaintiff further alleges that Offender Harris worked with McConnell Unit staff to write false disciplinary cases against Plaintiff, allegedly causing Plaintiff to lose money to Offender Harris. *Id.* at 2-3. Plaintiff alleges that Warden Nunez then used his authority to sign off on Plaintiff's false disciplinary cases and unlawfully hold Plaintiff in restrictive custody. *Id.* at 3.

As an initial matter, the Court must consider whether Plaintiff may bring a § 1983 claim against a fellow inmate, Offender Harris. To state a viable § 1983 claim, as noted above, a plaintiff must allege that the defendant acted under color of state law when depriving him of a constitutional right. 42 U.S.C. § 1983; *West,* 487 U.S. at 48. "[A] private party's private conduct may constitute state action, including when: (1) the party performs a function traditionally within the exclusive province of the state; (2) the state exercised coercive power over the party such that the conduct is deemed that of the state; or (3) the party conspired with a state actor." *Williams v. Caudillo*, No. 5:21-CV-106-BQ, 2022 WL 16935655, at *8 (N.D. Tex. Feb. 28, 2022) (citing *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003)).

Here, Plaintiff vaguely alludes to Offender Harris working with the McConnell Unit's "employment" to write disciplinary cases against him but offers no specific allegations that he conspired with any particular McConnell Unit official. Even accepting Plaintiff's allegations as true, Plaintiff fails to indicate that Offender Harris conspired with a state actor or that his conduct otherwise should be deemed to be state action. Plaintiff, therefore, cannot bring a § 1983 action against a private actor. *See Jackson v. Harris Cnty. Jail*, No. H-22-3222, 2022 WL 4588414, at *2 (S.D. Tex. Sep. 29, 2022) (Rosenthal, J) (dismissing with prejudice a plaintiff's claim against other jail inmates for failure to state a claim upon which relief may be granted). Even if Offender Harris' action could be construed as constituting state action, Plaintiff fails to state a viable claim against him, for the reasons stated below.

Plaintiff's due process claims challenge the constitutionality of his disciplinary convictions and placement in restrictive housing since June 2021. To establish a due process violation in connection with the disciplinary process and resulting punishments, a prisoner must

establish a liberty interest which was implicated or infringed by a prison action. *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007). Liberty interests protected by the Fourteenth Amendment's Due Process Clause are generally limited to: freedom from restraints which impose an atypical and significant hardship on an inmate in relation to the ordinary incidents of prisoner life; or those punishments that extend the length or duration of confinement. *Lopez v. Davis*, No. 6:19cv593, 2020 WL 6935560, at *2 (E.D. Tex. Oct. 7, 2020), *adopted* 2020 WL 888993 (E.D. Tex. Nov. 24, 2020) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Because Plaintiff has no liberty interest in his custodial classification, however, his placement in administrative segregation or other restrictive housing generally does not implicate a constitutionally cognizable liberty interest. *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995); *Lopez*, 2020 WL 6935560, at *2; s*ee also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise of a liberty interest in avoiding transfer to more adverse conditions of confinement."); *Sandin*, 515 U.S. at 486 (explaining that a plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivations in which a State might conceivably create a liberty interest"). Plaintiff alleges no facts to suggest that any prison official at the McConnell Unit, much less any of the defendants named, altered his custodial situation in a way to impose an atypical and significant hardship on him in relation to the ordinary incidents of prisoner life. *Sandin*, 515 U.S. at 484. Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due process challenge to a change in his custodial classification. *Id*.

Cases where segregated confinement is sufficiently atypical to implicate a due process liberty interest involve circumstances much harsher than those presented by Plaintiff. In *Sandin*, the Supreme Court cited examples of prison hardships that would qualify as so atypical and

11 / 16

significant as to implicate due process considerations, including the unwanted administration of anti-psychotic drugs, the involuntary commitment to a mental hospital, and extension of the prisoner's sentence for his underlying criminal conviction. *See* 515 U.S. at 484. Additionally, the Supreme Court has held that solitary confinement in a "Supermax" facility imposes an atypical and significant hardship that creates a liberty interest in avoiding such a placement when all of the following factors are taken together: almost all human contact, including cell to cell conversation, is prohibited; the light is on for 24 hours per day; exercise is limited to one hour per day, but only in a small indoor room; the placement in isolation is indefinite and is reviewed annually; and the placement disqualifies an otherwise eligible inmate from parole consideration. *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005).

      The extreme conditions cited by *Sandin* and present in *Wilkinson* are readily distinguishable from the present facts. Plaintiff provides no allegations showing that the conditions of his confinement in restrictive custody in the two-year period since 2021 have been particularly harsh. Plaintiff has been provided opportunities through the grievance process and reviews by the UCC and SCC to challenge any disciplinary conviction and reevaluate his current custodial classification. The fact that Plaintiff disagrees with his current custodial assignment falls well short of stating a constitutional violation.

      Further, Plaintiff's allegations suggesting that Officer Juarez, Offender Harris, and Warden Nunez used, relied on, or sanctioned the use of false statements to secure Plaintiff's numerous disciplinary convictions also fail to implicate a due process concern. *See Luken*, 71 F.3d 192, 193 (5th Cir. 1995) (placement in administrative segregation, even when it is based on false information, does not implicate a liberty interest); *Estrada v. Nehls*, No. H-19-3883, 524 F. Supp. 3d 578, 589-90 (S.D. Tex. 2021) (Hanen, J.) (same); *Lopez*, 2020 WL 6935560, at *2 ("An

inmate does not have a right to have false information removed from his prison record[,] and placement in administrative segregation based on allegedly false information does not constitute a deprivation of a constitutionally cognizable liberty interest."); *Reagan v. Burns*, No. 3:16-CV-2590-G-BH, 2019 WL 6733023, at *10 (N.D. Tex. Oct. 30, 2019), *adopted* 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019) (a claim that a disciplinary charge was false, standing alone, does not state a implicate a liberty interest). Although not entirely clear, Plaintiff appears to claim that the use of false statements in his disciplinary proceedings have led to punishments which potentially extend the length or duration of his confinement. (Doc. No. 11, p. 3.) He references the fact that such conduct has interfered with his "release," which the Court understands to mean release from custody. Plaintiff, however, provides no specific facts detailing whether any of his disciplinary convictions resulted in the loss of good-conduct time or operated to extend his sentence in any fashion.

Even assuming that Plaintiff was subjected to the loss of good-time conduct or other punishment interfering with his sentence and release, he is not entitled to relief. The Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

The Fifth Circuit has explained that "[i]t is well-settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted . . . .'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck*, 512 U.S. at 486-87). The *Heck* doctrine also operates to bar prisoners from seeking injunctive relief

or otherwise challenging the punishment imposed by a disciplinary proceeding through a § 1983 action. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[plaintiff's] claim for declaratory relief and money damages, based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder*, 154 F.3d 186, 189-91 (5th Cir. 1998) (*en banc*) (applying *Heck* to bar plaintiff's constitutional claims for injunctive relief that were fundamentally intertwined with his request for restoration of good-time credits).

Plaintiff's allegations, accepted as true, fail to reflect that any of his disciplinary convictions, even those convictions in which false statements may have been placed into the record, were overturned by any grievance appeal or set aside by any court. Because Plaintiff has not successfully had any disciplinary conviction set aside, he cannot seek relief with respect to his due process claims challenging these disciplinary convictions. *See Hughes v. Mathis*, No. 6:20-CV-19, 2020 WL 13111142, at *7 (S.D. Tex. Oct. 6, 2020) (Libby, M.J.), *adopted*, 2022 WL 473743 (S.D. Tex. Feb. 15, 2022).

Lastly, Plaintiff claims that his due process rights were violated when he was denied a unit transfer. Plaintiff's allegations indicate that the decision to deny him a unit transfer rested with the UCC and then with the SCC. Plaintiff advances no allegations to suggest that either Warden Nunez or Officer Juarez had any role or personal involvement in the decision-making process of either the UCC or SCC. Without any personal involvement or role in denying him a unit transfer, Plaintiff fails to state a due process claim against them. *See Thompson*, 709 F.2d at 382. Moreover, Plaintiff's claim that he was denied a unit transfer and instead assigned to restrictive housing fails to state a due process claim because "[t]here is no constitutionally recognized liberty interest in assignment to a particular unit." *Holloway v. Givens*, No. SA-17-CA-1173-XR, 2018 WL 11475106, at *3 (W.D. Tex. Feb. 5, 2018); *see also Yates v. Stalder*,

217 F.3d 332, 334 (5th Cir. 2000) (inmates have "no liberty interest in being housed in any particular facility"); *Barton v. Buckner*, No. SA-18-CA-119-OG, 2018 WL 6069170, at *3 (W.D. Tex. Nov. 20, 2018) (a prisoner's classification and housing assignment are committed to the discretion of the prison authorities and such classification decisions are not subject to due process challenges).

Accordingly, Plaintiff's due process claims against Warden Nunez, Officer Juarez, and Offender Harris attacking his disciplinary convictions, placement in restrictive housing, and denial of a unit transfer should be dismissed as frivolous or for failure to state a claim upon which relief may be granted.

E. *Conclusion and Recommendation.*

For the reasons stated above and for purposes of § 1915A, the undersigned recommends that the Court: (1) DISMISS without prejudice Plaintiff's § 1983 claims for money damages and injunctive relief against the State of Texas as barred by the Eleventh Amendment; (2) DISMISS without prejudice Plaintiff's § 1983 claims for money damages against Officer Juarez in his official capacity as barred by the Eleventh Amendment; and (3) DISMISS with prejudice Plaintiff's remaining due process claims against Warden Nunez, Offender Harris, and Officer Juarez as frivolous or for failure to state a claim upon which relief can be granted.

The undersigned further recommends that this dismissal count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be instructed to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District of Texas at Three_Strikes@txs.uscourts.gov.

### F. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on April 13, 2023.

_____
MITCHEL NEUROCK
United States Magistrate Judge